## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GABRIEL CASSELL,
        **Plaintiff,**

    **v.**

THE COUNTY OF MONTGOMERY,
PENNSYLVANIA, MONTGOMERY
COUNTY DOMESTIC RELATIONS, THE
COUNTY OF RAMSEY MINNESOTA,
OLIVIA J. SEWARD, JENNIFER
HEKKING AND JULIE LA FLEUR,
        **Defendants.**

CIVIL ACTION

NO. 17-1077

## <u>OPINION</u>

*Pro se* Plaintiff Gabriel Cassell filed this action pursuant to 42 U.S.C. § 1983 ("Section 1983")

for alleged violations of his constitutional rights in connection with the enforcement of a child support

judgment. The judgment was issued against Plaintiff by a Minnesota state court and enforced against

him in Pennsylvania. Plaintiff brings this suit against Defendants Ramsey County, Minnesota ("Ramsey

County"); Olivia Seward, his former spouse and the opposing party in the Minnesota litigation; Julie

LaFleur, counsel for Seward in the Minnesota litigation; Montgomery County, Pennsylvania

("Montgomery County"); the Montgomery County Domestic Relations Division ("MCDR"); and

Jennifer Hekking, an attorney employed by MCDR to prosecute the enforcement of court-ordered child

support obligations.

Pending before the Court are Plaintiff's motion for a preliminary injunction and the responses

thereto filed by MCDR, Hekking, and Montgomery County. Also before the Court are motions to

dismiss based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by MCDR, Hekking,

Montgomery County, and LaFleur.[1] Of the motions to dismiss, Plaintiff has responded only to the motions filed by MCDR and LaFleur.

For the reasons set forth herein, the motions to dismiss filed by MCDR, Hekking and Montgomery County, and LaFleur shall be granted with prejudice, Plaintiff's motion for preliminary injunction shall be dismissed as moot, and Plaintiff is denied leave to amend.

## I.  FACTUAL AND PROCEDURAL HISTORY

The case *sub judice* is the latest skirmish in a long battle over child support. In 2006, Plaintiff's former spouse – Seward – sought and obtained from a Ramsey County, Minnesota state court a child support judgment ordering Plaintiff to pay monthly amounts towards the support of L.A.C., his daughter with Seward. *See Cassell v. Cassell*, No. A07-1655, 2008 WL 2651425 (Minn. Ct. App. July 8, 2008).

Between 2006 and 2011, Plaintiff sought to modify the Ramsey County judgment several times, resulting in two opinions by the Minnesota Court of Appeals. *Cassell v. Cassell,* No. A07–1655, 2008 WL 2651425 (Minn. Ct. App. July 8, 2008) (affirming in part and reversing in part[2]), *review denied* (Minn. Sept. 23, 2008); *Cassell v. Cassell,* Nos. A10–1085, A10–1524, 2011 WL 781225 (Minn. Ct. App. Mar. 8, 2011) (affirming denial of Plaintiff's motion to modify child support), *review denied* (Minn. Apr. 19, 2011).

---

[1] MCDR and LaFleur filed motions to dismiss prior to service of process. Plaintiff has not alleged that MCDR and LaFleur's motions to dismiss are premature and points to no authority to suggest that the Court cannot consider the motions. Since the purpose of requiring service of process on MCDR and LaFleur – namely, ensuring that the parties are fully aware of the case against them – has clearly been fulfilled, there is nothing to prevent the Court from ruling on their motions to dismiss. *See, e.g.*, *Unite Nat'l Retirement Fund v. Ariela, Inc.*, 643 F.Supp.2d 328, 336 (S.D.N.Y. 2008) (finding process complete due to defendants' actual notice of the litigation); *Byrne v. Trudell*, No. 12-245, 2013 WL 2237820 at *7 (D. Vt. May 21, 2013) (where defendants filed a motion to dismiss prior to service, adequate notice of the complaint was established and any defense relating to the inadequacy of service of process was waived).

[2] The Minnesota Court of Appeals reversed in part, noting, *inter alia*, that the trial court's findings did not support the conclusion that Plaintiff could pay $412 per month in child support when his monthly income was $1,648.10 and his monthly expenses were $2,868.82. *Cassell*, 2008 WL 2651425, at *11-12. The Court remanded to the trial court to review its determinations on parenting time and child support. *Id.* at *12. On remand, the trial court reduced its assessment of Plaintiff's monthly expenses to $1,400 – omitting the expenses attributed to his current wife – and again ordered him to pay child support in the amount of $412 per month. *Cassell*, 2011 WL 781225, at *1.

In 2012, after nearly six years of back-and-forth litigation over custody and child support, the Minnesota court designated Plaintiff a frivolous litigant, issuing an order that limited his ability to bring future motions and ordered him to either secure an attorney to serve and file motions or, if not represented by counsel, to furnish a surety bond of $10,000 to ensure that Seward would be paid if the court ordered Plaintiff to pay her costs. *See Cassell v. Cassell*, No. A13-0316, 2013 WL 5420303 at *1 (Minn. Ct. App. Sept. 30, 2013), *review denied* (Minn. Dec. 17, 2013). Plaintiff appealed that order to the Minnesota Court of Appeals, which affirmed the lower court, and the Minnesota Supreme Court denied review. *Id*.

Plaintiff then moved his operations to the United States District Court for the District of Minnesota, where he filed suit against Ramsey County and other defendants, asserting violations of Section 1983 and state tort law. *Cassell v. County of Ramsey*, No. 10-4981, 2012 WL 928242 (D. Minn. Mar. 19, 2012). In brief, Plaintiff alleged that the Ramsey County court lacked jurisdiction to enter the child support order. *Id*. at *2. Specifically, Plaintiff claimed that Seward and her counsel misrepresented a precondition for the court's jurisdiction over the suit – namely, that L.A.C. lived in Ramsey County at the time the action was filed there. *Id*. The District Court rejected Plaintiff's arguments, dismissed his Complaint with prejudice, and denied as moot his motion for a preliminary injunction. *Id*. at *7. Plaintiff appealed to the Eighth Circuit Court of Appeals, which affirmed. *Cassell v. County of Ramsey*, 490 Fed. App'x 842 (8th Cir. 2012).

Undeterred, Plaintiff refiled in the same United States District Court, asserting Section 1983 claims for federal constitutional violations. *See Cassell v. County of Ramsey*, No. 15-2598, 2015 WL 9590802 (D. Minn. Dec. 11, 2015). The Court dismissed the action in its entirety, denied Plaintiff's motion for a preliminary injunction, and imposed sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11 enjoining him from filing future lawsuits relating to his state family court proceedings unless: (a) the pleadings related to any such lawsuit were signed by an attorney admitted to the United States District

Court for the District of Minnesota; or, (b) a judicial officer of that District authorized the filing of such pleadings in advance. *Cassell v. County of Ramsey*, No. 15-2598, 2015 WL 9581806 at *1 (D. Minn. Dec. 30, 2015).

Meanwhile, the Ramsey County judgment was registered with Montgomery County, Pennsylvania, where Plaintiff resides. From 2014 to 2016, Montgomery County enforced the child support order by garnishing Plaintiff's wages and, when he was unemployed, his unemployment benefits. Plaintiff contested enforcement of the judgment by presenting evidence to Montgomery County that it had been fraudulently obtained by Seward and her counsel, LaFleur. MCDR nevertheless proceeded to enforce the judgment by garnishing Plaintiff's wages. Plaintiff has sought to modify his child support obligations by filing petitions with Ramsey County, but has been unable to meet the filing requirements imposed upon him pursuant to his designation as a frivolous litigant by the Ramsey County trial court.

In 2016, Plaintiff notified MCDR that L.A.C. would become emancipated that year, and inquired as to the effect of her emancipation on his support payments. MCDR advised Plaintiff that his support obligations would cease as soon as L.A.C. became emancipated, but that he would be required to make continued monthly payments towards arrears, which totaled approximately $15,000. After L.A.C. became emancipated in June 2016, Plaintiff learned that his child support arrearage was in fact $27,000, having been increased to include attorneys' fees. Plaintiff denies entering into an agreement with Seward to pay arrears in full, and alleges that including attorneys' fees in child support arrears violates Pennsylvania law.

Plaintiff now brings suit in this court, asserting three causes of action against Defendants: first, a "violation of 42 U.S.C. § 1983; violation of the Eighth and Fourteenth Amendments to the United States Constitution and Pennsylvania law;" second, "intentional infliction of emotional distress and conspiracy in violation of 42 U.S.C. § 1983;" third, "abuse of power and conspiracy in violation of 42 U.S.C. §

1983 and the Fourteenth Amendment." As remedies for these claims, Plaintiff seeks permanent injunctive relief enjoining Defendants from enforcing all judgments issued against him, declaratory relief in the form of an order finding all judgments issued by Ramsey County courts against Plaintiff unconstitutional and void, $10 million in compensatory damages, and punitive damages, costs, and expenses.

Plaintiff's Complaint does not set forth discrete causes of action, specify which claims are brought against which Defendants, or clarify what forms of relief apply to which claims. Construing the Complaint liberally in light of Plaintiff's *pro se* status, the Court concludes that he pleads the following claims: (1) a Section 1983 claim against all Defendants based on a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) a due process claim against all Defendants under the Pennsylvania Constitution, Art. I § 1; (3) a Section 1983 claim against all Defendants based on a violation of the Eighth Amendment to the United States Constitution; (4) a claim against all Defendants under the Pennsylvania Constitution, Art I. § 13; (5) a claim against all Defendants for intentional infliction of emotional distress under Pennsylvania law; (6) a claim against all Defendants for Section 1983 conspiracy; (7) and a claim against all Defendants for "abuse of power" under Section 1983.

## II.   LEGAL STANDARD

### 1.   Rule 12(b)(1)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) provides a vehicle for a party to move for dismissal for lack of subject-matter jurisdiction. As the party invoking jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

## 2.  Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient facts that, when accepted as true, state a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).  A complaint is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not establish a plausible allegation.  *Id.*

Where, as here, the plaintiff is proceeding *pro se*, "the court has an obligation to construe the complaint liberally."  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). However, while *pro se* plaintiffs cannot be held to as high a pleading standard as other litigants, they must nevertheless adhere to basic pleading requirements.  *See, e.g.*, *Hamilton v. Jamieson*, 355 F. Supp. 290, 298 (E.D. Pa. 1973); *Wells v. Brown*, 891 F.2d 591, 592-94 (6th Cir. 1988) (collecting cases in which courts have required *pro se* litigants to adhere to basic pleading requirements); *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961) ("[T]here is no duty [on the part] of the trial court or appellate court to create a claim which appellant has not spelled out in his pleading.")

## III.    DISCUSSION

Although the Complaint must ultimately be dismissed in its entirety as against MCDR, Hekking and Montgomery County, and LaFleur, no single doctrine is dispositive as to the whole pleading. Defendants' motions to dismiss raise several issues, many of which overlap, and many of which affect only certain Defendants. Under the *Rooker-Feldman* doctrine, for instance, this Court lacks subject-matter jurisdiction over Plaintiff's claims against all Defendants, but only to the extent he seeks the review and rejection of final judgments issued by Minnesota state courts. Similarly, pursuant to the *Younger* doctrine, the Court must abstain from reviewing the Minnesota child support order to the extent Plaintiff seeks injunctive and declaratory relief from that ongoing state proceeding.

The federal constitutional claims that elude these jurisdictional and comity-related doctrines still face additional defenses: Eleventh Amendment immunity (in the case of MCDR), prosecutorial immunity (in the case of Hekking), failure to plead a policy or custom sufficient for *Monell* liability (in the case of Montgomery County), and failure to establish state action under Section 1983 (in the case of LaFleur). The application of these doctrines – and, to the extent possible, their relationship *inter se* – is explained herein.

Finally, because these doctrines eliminate all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims.

**1. Service of MCDR's Motion to Dismiss on Plaintiff**

As an initial matter, Plaintiff contends that MCDR's motion to dismiss should be denied for failure to waive service of process in violation of Federal Rule of Civil Procedure 4(d), and for failure to serve the motion on him in accordance with Federal Rule of Civil Procedure 5(a).[3]

Rule 5(a) requires that "a written motion, except one that may be heard ex parte" "must be served on every party." Fed. R. Civ. P. 5(a). Plaintiff argues that MCDR's motion to dismiss should be denied because the motion was not served upon him.

Where the receipt of an item sent via mail is at issue, a rebuttable presumption of receipt arises upon a showing that the item was mailed. *See In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002) ("The common law has long recognized a presumption that an item properly mailed was received by the addressee . . . . The presumption arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail."). A certificate of service is prima facie evidence that service was made. *See, e.g.*, *Leboon v. Zurich Am. INS. Co.*, No. 15-05904, 2016 WL 1556011, at *2 (E.D. Pa. Apr. 18, 2016), *aff'd,* No. 16-2088, 2016 WL 7210093 (3d Cir. Dec. 12, 2016) (certificate

---

[3] Because the Court addressed Plaintiff's Rule 4(d) argument when it dismissed his Motion for Default Judgment, only the latter issue requires discussion.

of service appended to motion to dismiss established rebuttable presumption of receipt); *Blomeyer v. Levinson*, No. 02-8378, 2006 WL 463503, at *5 (E.D. Pa. Feb. 21, 2006) ("[O]nce a certificate of service is filed averring that a pleading has been served by being placed in the U.S. mail, a presumption of regularity arises that the addressee received the pleading.") (quotation omitted).

Although a denial of receipt may rebut this presumption, a denial "generally will not overcome the presumption in the absence of some supporting evidence." *Blomeyer*, 2006 WL 463503, at *5; *see also In re Cendant*, 311 F.3d at 304-05 (providing examples of cases in which the presumption was rebutted where there were specific allegations of mailroom misconduct or other identifiable irregularity in the receiving or sending procedures); *Leboon*, 2016 WL 1556011, at *2 (plaintiff did not overcome presumption where he provided no supporting evidence; "for example, any evidence that he changed his address, mailroom misconduct or other identifiable irregularity in the receiving or sending procedures.") (internal quotation omitted).

Here, MCDR appended a Certificate of Service to its motion in accordance with Rule 5(d)(1) and Local Rule 5.1.2(8)(b), thereby establishing a presumption of receipt. The Certificate of Service states that the motion was served on Plaintiff by mailing it to his address.[4] Mailing a motion to the recipient's last known address is a permissible method of service under Rule 5(b)(2)(C), which provides that service is complete upon mailing. Fed. R. Civ. P. 5(b)(2)(C). Because Plaintiff has not presented any evidence to support his denial of receipt of MCDR's motion, the presumption that he received the motion prevails.

---

[4] The Certificate of Service appended to MCDR's motion to dismiss states that counsel "hereby certifies that on March 21, 2017, she personally caused to be served upon [Plaintiff] a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Complaint and Brief in Support of Motion, CM/ECF and by mailing same first class, postage pre-paid, U.S. mail to: Gabriel Cassell, 521 Beech Street, Pottstown, PA 19464 . . . ." This is the same address that Plaintiff listed in his Complaint and in other filings with this Court.

## 2. *Rooker-Feldman* Doctrine

Insofar as Plaintiff seeks relief from state court orders, his claims fall squarely within the class of matters prohibited by the *Rooker-Feldman* doctrine and must be dismissed for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). Under *Rooker-Feldman*, federal district courts lack subject-matter jurisdiction to review final state court judgments. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *Gary v. Braddock Cemetery*, 517 F.3d 195, 206 (3d Cir. 2008). The *Rooker-Feldman* doctrine applies if: (1) the federal plaintiff lost in state court; (2) the plaintiff presently complains of injuries caused by the state court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *See Great Western Mining and Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005)).

### a. Plaintiff Lost in State Court

Plaintiff has unsuccessfully litigated the child support order and his designation as a frivolous litigant in the Minnesota court system, and is thus a "state court loser" for purposes of the *Rooker-Feldman* doctrine. *Great Western Mining*, 615 F.3d at 166 (quoting *Exxon Mobil*, 544 U.S. at 284).

On its first review of the child support order, the Minnesota Court of Appeals remanded to the state trial court to revisit its determinations on parenting time and child support. *Cassell*, 2008 WL 2651425, at *11-12. The Minnesota Supreme Court denied review in September 2008. *Id*. On remand, the trial court reassessed Plaintiff's monthly expenses and, in January 2009, ordered him to make the same monthly child support payments. *Cassell*, 2011 W L 781225, at *1. Plaintiff did not take the

requisite procedural steps to appeal from the trial court's January 2009 order.[5] Instead, he moved the trial court to modify his child support obligations on the basis that he had left full-time employment to attend school. *Id.* In April 2010, a child-support magistrate ("CSM") denied this motion, and the trial court affirmed. Plaintiff appealed to the Minnesota Court of Appeals, which affirmed the trial court. *Cassell*, 2011 W L 781225, at *2 (holding that trial court did not abuse its discretion by declining to modify Plaintiff's child support obligation). The Minnesota Supreme Court denied review in April 2011. *Id.*

In 2013, Plaintiff appealed the state trial court order designating him a frivolous litigant and restricting his ability to file motions. The Minnesota Court of Appeals affirmed the trial court, *Cassell*, 2013 WL 5420303, at *2, and the Minnesota Supreme Court denied review. *Id.*

### b. Plaintiff Complains of Injuries Caused by the State Court Judgments

Second, Plaintiff presently complains of injuries caused by the Minnesota state court judgments. In *Great Western Mining*, the Third Circuit cited the following example of a case that would be barred by *Rooker-Feldman* because the state court judgment itself was the source of the injury:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

*Great Western Mining*, 615 F.3d at 166-67 (quotation and citation omitted).

The instant suit bears strong parallels to this example. The Minnesota state courts ordered Plaintiff to pay child support, declined to modify his support obligations, designated him a frivolous litigant, and imposed limitations on his ability to litigate. Those orders were affirmed by the Minnesota appellate courts. Plaintiff now complains of injuries caused by these judgments; his Eighth and

---

[5] *Cassell*, 2011 W L 781225, at *3. Plaintiff did not timely file a notice of appeal with the clerk of the appellate courts or effect timely service on the adverse party. Thus, when the Minnesota Court of Appeals considered Plaintiff's second appeal in 2011, the Court found that it lacked jurisdiction over Plaintiff's attempt to challenge his child support obligation arising out of the January 2009 order. *Id.*

Fourteenth Amendment claims are based on allegations that Defendants impoverished him through monthly child support withholdings, punitively denied him access to the courts in designating him a frivolous litigant, and intentionally inflicted emotional distress upon him by limiting his ability to litigate. As relief, Plaintiff asks this Court for an order declaring all Minnesota judgments issued against him unconstitutional, and enjoining their enforcement. Thus, he effectively seeks to use the federal system to appeal state court judgments, in direct contravention of the *Rooker-Feldman* doctrine.

### c. The State Court Judgments Were Rendered Before the Federal Suit Was Filed

Third, the Minnesota judgments were rendered before this federal suit was filed. The Ramsey County court issued the original child support order in 2006, followed by a subsequent judgment in 2007 on Plaintiff's motion to reconsider. *Cassell*, 2011 W L 781225, at *1. The Minnesota Court of Appeals decisions were issued in 2008, 2011, and 2013. *Cassell*, 2008 WL 2651425; *Cassell*, 2011 W L 781225; *Cassell*, 2013 WL 5420303. Plaintiff filed the instant federal suit in March 2017.

### d. Plaintiff Invites the District Court to Review and Reject the State Judgments

Finally, Plaintiff explicitly invites this Court to review and reject the Minnesota state judgments, and to enjoin the Pennsylvania courts from their enforcement. He seeks "[t]he issuance of an Order and Permanent Injunction that: Defendants Montgomery County and Ramsey County immediately cease enforcements of ALL orders and judgments issued against Plaintiff, including income withholdings, wage garnishment, federal and state refunds intercept, bank levy, negative credit bureau reporting, travel restrictions, [and] employment restrictions," as well as "[t]he issuance of an Order declaring ALL judgments and orders issued in Ramsey County against Plaintiff to be illegal, void and unconstitutional." Compl. ¶¶ 65(a)-(b). In essence, he asks this Court to void the Ramsey County judgments and reverse the rulings of the Minnesota Court of Appeals affirming those decisions.

Thus, because Plaintiff's Eighth and Fourteenth Amendment claims allege injuries caused by the Minnesota judgments that ordered him to pay child support, declined to modify his support obligations,

designated him a frivolous litigant, and limited his ability to litigate, federal review of those state court judgments is barred by *Rooker-Feldman*. Those claims are accordingly dismissed against MCDR, Montgomery County, Hekking, and LaFleur.[6]

### 3. *Younger* Abstention

Furthermore, the *Younger* doctrine dictates that the Court abstain from exercising jurisdiction over Plaintiff's claims for injunctive and declaratory relief arising from enforcement of the child support order.[7] Pursuant to *Younger*, a federal district court "must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) (citing *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982)). The *Younger* doctrine "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626 (1986). *Younger* abstention is grounded "both on equitable principles, and on the 'more vital consideration' of the proper respect for the fundamental role of States in our federal system." *Id*. at 626-27 (quoting *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)).

---

[6] Not all of Plaintiff's claims are barred by *Rooker-Feldman*. His Section 1983 conspiracy claim is not barred because, as the Third Circuit explained in *Great Western Mining*, "Regardless of the merits of the state-court decisions, if [the plaintiff] could prove the existence of a conspiracy to reach a predetermined outcome in state court, [he] could recover nominal damages for this due process violation." *Great Western Mining*, 615 F.3d at 173. Thus, if Plaintiff can show that the Defendants conspired against him in some way, he will have shown that he has been deprived of the right to an impartial forum – an independent claim that does not directly attack the state court judgments *per se*. *See id.* at 172; *see also Mikhail v. Kahn*, 991 F.Supp.2d 596, 621 (E.D. Pa. 2014). Of course, that such claims surmount the *Rooker-Feldman* barrier does not save them from being dismissed otherwise, as discussed *infra*.

[7] The courts of appeals are split on the issue of whether damages claims should be dismissed under *Younger*. "The Supreme Court has never explicitly decided whether *Younger* abstention covers actions for damages as well as equitable relief . . . . [Other Supreme Court] cases seem to indicate that abstention under *Younger* principles is not proper when damages are sought." *Marran v. Marran*, 376 F.3d 143, 154-55 (3d Cir. 2004) (not deciding the issue); *see also Howard v. N.J. Div. of Youth & Family Servs.*, 398 Fed. App'x 807, 809 (3d Cir. 2010) (holding that *Younger* abstention was appropriate as to injunctive and declaratory claims, but that claims for damages and attorneys' fees should have been stayed instead of dismissed pursuant to *Younger*, since such relief was not available in ongoing state proceedings).

There are three requirements for the application of the *Younger* doctrine: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and, (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Lazaridis*, 591 F.3d at 670.

### a. Ongoing State Proceeding

Turning to the first prong of the *Younger* test, child support orders are "ongoing" for purposes of *Younger* abstention because they necessarily require the continued involvement of state courts, which are "charged with monitoring, enforcing and modifying the child support obligations." *Anthony v. Council*, 316 F.3d 412, 419 (3d Cir. 2003). Child support orders "endure for many years and require continual state involvement," and the fact that "state courts continually monitor, enforce and modify child support orders makes these particular procedures unique." *Id*. at 419 n.9.

Here, the child support proceedings from which Plaintiff seeks relief are indisputably ongoing, since enforcement of the Minnesota order in Montgomery County requires the continued involvement of the Pennsylvania state court system. Plaintiff asks the Court for injunctive and declaratory relief proscribing the garnishment of his wages (which continue to be deducted by MCDR on a monthly basis to satisfy his child support arrearages), the restrictions on his travel and employment, and the negative reporting on his credit history. These matters require continued enforcement by the Pennsylvania state courts, and may be subject to future review and modification. Accordingly, the child support proceedings are "ongoing" for purposes of *Younger* abstention. *See Anthony*, 316 F.3d at 419; *Sheils v. Bucks County Domestic Relations Section*, 921 F.Supp.2d 396, 410 (E.D. Pa. 2013) (finding child support proceedings "ongoing" under *Younger* where plaintiff sought prospective injunctive relief as to the garnishment of his wages, the threat of incarceration, the reporting of information to credit bureaus, and his passport eligibility).

### b. Important State Interest

"The second prong of the [*Younger*] test asks whether the state proceedings implicate important state interests." *Lazaridis*, 591 F.3d at 671. "'This is a particularly appropriate admonition in the field of domestic relations, over which federal courts have no general jurisdiction . . . and in which the state courts have a special expertise and experience.'" *Id.* (quoting *Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000)).

"Ensuring the provision of child support is a function particular to the states," *Anthony*, 316 F.3d at 418 (citing New Jersey law that grants its courts the authority to order and direct the payment of child support). Minnesota law grants its state courts and agencies much the same powers as those *Anthony* identified. *See generally* Minn. Stat. § 518 (2015) (setting forth child support guidelines). Pennsylvania law, for its part, grants Pennsylvania courts the authority to enforce out-of-state child support orders. *See* 23 Pa. Cons. Stat. §§ 7105 (2015); *Morrisey v. Morrisey*, 713 A.2d 614, 616, 616 n.3 (Pa. 1998) (noting that the Uniform Interstate Family Support Act ("UIFSA"), which has been adopted by Pennsylvania, requires state courts to afford foreign child support orders the same effect as domestic support orders). Minnesota has a substantial interest in the enforcement of Minnesota child support orders registered in other states, while enforcement of such orders by Pennsylvania courts implicates an important state interest in the fair administration of the reciprocal child support enforcement system. *See Anthony*, 316 F.3d at 421 (states have an overriding interest in ordering, monitoring, enforcing, and modifying child support obligations). Accordingly, the interests of Minnesota and Pennsylvania in Plaintiff's child support proceedings are "sufficiently important that exercise of the federal judicial power would amount to disregard of . . . comity." *Schall v. Joyce*, 885 F.2d 101, 107 (3d Cir. 1989).

In addition, a state has a vital interest in protecting "the authority of [its] judicial system . . . ." *Schall*, 885 F.2d at 108 (quoting *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977)). Thus, "when the other elements of the *Younger* test are met, neither injunctive nor declaratory relief will be available in cases

in which the federal relief would render the state court's orders or judgments nugatory." *Lazaridis*, 591

F.3d at 671. As in *Lazaridis*, Plaintiff here

> . . . essentially wants wholesale federal intervention into a state dispute. He seeks the vacation of existing orders and a federal injunction directing future litigation. Were the District Court to grant this relief, it could 'readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.' *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). This is precisely the type of case suited to *Younger* abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system.

*Id.*

Enforcing the provision of child support is a function particular to the states, and undermining

Minnesota and Pennsylvania's important interest in that function is not within the proper purview of this

Court.

### c. Adequate Opportunity to Raise Federal Claims

Third, Plaintiff has not met his burden of showing that state proceedings provide an inadequate

opportunity to raise his federal claims. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("[T]he

burden on this point rests on the federal plaintiff to show that the state procedural law barred

presentation of [its] claims.") Absent some showing of a procedural defect, the presumption underlying

*Younger* is that "[s]tate courts are every bit as competent to deal with the [plaintiff's] claims . . . as are

the federal courts and this, of course, includes the ability to address claims under both the State

constitution and the Federal constitution." *Lui v. Comm'n on Adult Entm't Establishments*, 369 F.3d

319, 326 (3d Cir. 2004).

Although the Ramsey County court has imposed restrictions on Plaintiff's ability to file motions

pursuant to his classification as a frivolous litigant, it has not foreclosed him from doing so. Plaintiff is

free to petition the Minnesota state courts for modification of his child support obligations and to raise

his constitutional claims, provided he either retains an attorney to serve and file motions or, if not

represented, furnishes a surety bond to cover any costs ordered against him. *See Cassell v. Cassell*, 2013

WL 5420303 at *1. There is nothing to suggest that these restrictions would cause Plaintiff irreparable harm, since any initial pecuniary loss can be remedied adequately by the courts through an award of damages and costs. *See, e.g.*, *Jou v. Chang*, 350 F.Supp.2d 862, 867 (D. Hi. 2004) (*Younger* exception did not apply where plaintiff's harm caused by backlog in state court system could be remedied through damages award), *aff'd*, 210 Fed. App'x 578 (9th Cir. 2006). Nor has Plaintiff described any foiled attempt to raise his federal constitutional challenges in state proceedings. *See Middlesex*, 457 U.S. at 435 (where respondent "failed even to attempt to raise any federal constitutional challenge in the state proceedings," it was "difficult to conclude that there was no 'adequate opportunity' . . . to raise his constitutional claims."). Thus, Plaintiff has not met his burden of showing an inadequate opportunity to present the instant claims to state courts.

### d. Bad Faith, Harassment, or Other Extraordinary Circumstances

There is a potentially relevant exception to the *Younger* abstention doctrine which applies when the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment, or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted. *See Schall*, 885 F.2d at 106.

Plaintiff has not demonstrated any bad faith, harassment, or other extraordinary circumstances that would bring this case under the aegis of this narrow exception. He does allege, in conclusory fashion, that Defendants obtained the child support judgment against him in bad faith and conspired to deprive him of his constitutional rights. But, absent more, he cannot successfully invoke the bad faith exception. *See, e.g.*, *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000) ("Mere conclusory allegations of bias are insufficient to overcome *Younger* – a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception."); *Brooks v. New Hampshire*

*Supreme Court*, 80 F.3d 633, 639 (1st Cir. 1996) (invoking the exception to *Younger* "requires more

than the frenzied brandishing of a cardboard sword.").

In sum, because all three *Younger* predicates are met and Plaintiff has not plausibly alleged any

bad faith, harassment, or extraordinary circumstances that would make it inappropriate, abstention

principles dictate dismissal of his child support-related claims for injunctive and declaratory relief

against all Defendants.[8]

### 4. Sovereign Immunity Shields MCDR From State and Federal Claims

As to any residual claims against MCDR that are not barred by *Rooker-Feldman* and *Younger*,

MCDR is entitled to Eleventh Amendment sovereign immunity. Generally, the Eleventh Amendment

bars federal and state law actions against states and their agencies, regardless of the relief

sought. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58 (1996); *Pennhurst State School &*

*Hosp. v. Halderman*, 465 U.S. 89, 106.[9]

As a division of the Montgomery County Court of Common Pleas, MCDR is an arm of the state.

The Montgomery County Court of Common Pleas is an entity of the Unified Judicial System of

Pennsylvania, *see* 42 Pa. Cons. Stat. § 301(4), which is in turn part of the Commonwealth government.

*See* Pa. Const. Art. V §§ 1, 5; 42 Pa. Const. Stat. § 102. Pennsylvania's judicial districts, including the

courts of common pleas, are thus entitled to Eleventh Amendment immunity. *See Benn v. First Judicial*

*Dist. Of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005); *Bryant v. Cherna*, 520 F. App'x 55, 58 (3d Cir. 2013);

---

[8] In his Complaint, Plaintiff sets forth demands for injunctive relief ("The issuance of an Order and Permanent Injunction that: Defendants Montgomery County and Ramsey County immediately cease enforcements of ALL orders and judgments issued against Plaintiff, including income withholdings, wage garnishment, federal and state refunds intercept, bank levy, negative credit bureau reporting, travel restrictions, [and] employment restrictions") and declaratory relief ("The issuance of an Order declaring ALL judgments and orders issued in Ramsey County against Plaintiff to be illegal, void and unconstitutional"). He does not, however, clarify which claims pertain to which relief. To the extent Plaintiff seeks injunctive and declaratory relief arising out of the enforcement of the child support order, that relief is precluded by the *Younger* doctrine.

[9] The exception to Eleventh Amendment immunity that exists for suits against individual state officers for prospective relief, as set forth in *Ex Parte Young*, 209 U.S. 123 (1908), does not apply here.

*Chilcott v. Erie CO. Domestic Relations*, 283 Fed. App'x 8, 10 (3d Cir. 2008) (district court properly dismissed the suit against domestic relations section of the Erie County Court of Common Pleas on Eleventh Amendment grounds). Accordingly, this action is dismissed in its entirety as against MCDR under Rule 12(b)(6).

### 5. Prosecutorial Immunity Shields Hekking from Section 1983 Liability

As to the Section 1983 claims against Hekking that are not barred by *Rooker-Feldman* or *Younger*, Hekking asserts prosecutorial immunity. Plaintiff's claims against Hekking arise out of her enforcement of the child support judgment in Pennsylvania in her capacity as an attorney for Montgomery County. Plaintiff brings suit against her, *inter alia*, under Section 1983 for conspiracy and violations of the Eighth and Fourteenth Amendments.

State prosecutors have absolute immunity in relation to constitutional claims arising from "'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings . . . and which occur in the course of [her] role as an advocate for the State . . . .'" *Yarris v. Cnty. of Del.,* 465 F.3d 129, 136 (3d Cir.2006) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). In the Third Circuit, attorneys prosecuting child support proceedings are immune from suit under Section 1983. *See Ernst v. Child & Youth Services of Chester County,* 108 F.3d 486, 488-89 (3d Cir. 1997); *Bryant v. Cherna*, 520 Fed. App'x 55, 58 (3d Cir. 2013); *Paylor v. Allegheny County*, No. 14-1688, 2015 WL 541048 at *6 (E.D. Pa. Feb. 10, 2015).

Plaintiff's claims against Hekking plainly arise from actions she took as an advocate for Montgomery County in her efforts to enforce the Minnesota child support order. Consequently, she is entitled to prosecutorial immunity on the Section 1983 claims alleging conspiracy and violations of the Eighth and Fourteenth Amendments. Those claims are dismissed as against Hekking under Rule 12(b)(6).

### 6. LaFleur is Not a "State Actor" for Purposes of Section 1983

Turning to the Section 1983 claims that remain against LaFleur, she moves for dismissal of those claims on grounds that she is not a "state actor."[10] The claims against LaFleur arise from her representation of Seward in the Minnesota child support proceedings. Lawyers, typically, are not "state actors" for Section 1983 purposes, and private attorneys do not act under color of state law merely by representing a client. *See Polk County v. Dodson*, 454 U.S. 312, 450 (1981); *Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999).

Here, LaFleur's only connection to state action is her representation of Seward in Minnesota family court. Plaintiff has alleged no facts to suggest any connection between LaFleur and a state actor beyond her position as an officer of the court. Consequently, any Section 1983 claims that survive *Rooker-Feldman* and *Younger* are dismissed as against LaFleur under Rule 12(b)(6).

### 7. Plaintiff Fails to Plead a Custom or Policy Maintained By Montgomery County Sufficient for Section 1983 Liability

As to the Section 1983 claims against Montgomery County that are not barred by *Rooker-Feldman* or *Younger*, the County moves for dismissal under Rule 12(b)(6), arguing that Plaintiff has failed to state a claim for municipal liability pursuant to *Monell v. New York City Dep't of Social Serv's,* 436 U.S. 658 (1978). The County is correct that Plaintiff has not that pleaded sufficient factual content to allow the Court to infer that his alleged constitutional violations were caused by an official policy or custom maintained by the County.[11] Moreover, the County correctly points out that it is

---

[10] Section 1983 subjects to liability those persons who, acting "under color of law," deprive another of his constitutional rights. *See Leshko v. Servis.*, 423 F.3d 337, 339 (3d Cir. 2005). Private citizens generally do not act "under color of law" unless there is such a "close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n.*, 531 U.S. 288, 295 (2001) (quotations omitted). The plaintiff bears the burden of establishing that the defendant is a state actor for purposes of Section 1983. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1994).

[11] Indeed, Montgomery County contends that it would be impossible for Plaintiff to demonstrate such a nexus, since the County lacks administrative authority under Pennsylvania law over the Court of Common Pleas and MCDR. Rather, as an entity of the Unified Judicial System of Pennsylvania, MCDR is subject to the authority of the Supreme Court of Pennsylvania.

immune from punitive damages under Section 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267-70 (1981). Accordingly, Plaintiff's federal constitutional claims against Montgomery County under Section 1983 are dismissed pursuant to Rule 12(b)(6).

## 8. Abuse of Power

Plaintiff's Complaint references a claim under Section 1983 for "abuse of power," albeit with no legal authority. Although the Court has an obligation to construe a *pro se* plaintiff's Complaint liberally, *see Giles*, 571 F.3d at 322, *pro se* litigants must nevertheless adhere to basic pleading requirements. *See, e.g.*, *Hamilton*, 355 F. Supp. at 298 ("We are not required to stretch our imagination to manufacture allegations to supplement the complaint . . . ."); *Case*, 294 F.2d at 678 ("[T]here is no duty [on the part] of the trial court or appellate court to create a claim which appellant has not spelled out in his pleading.") Plaintiff's unexplained and unsupported claim for "abuse of power" fails to state any legally cognizable claim and it must be dismissed pursuant to Rule 12(b)(6).

## 9. Supplemental Jurisdiction Over Plaintiff's State Law Claims

Remaining are Plaintiff's state law claims against LaFleur, Hekking, and Montgomery County for intentional infliction of emotional distress ("IIED") and violations of the Pennsylvania Constitution. Because Plaintiff's federal claims have been dismissed as against LaFleur, Hekking, Montgomery County, and MCDR – the remaining Defendants in this action – the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction.") "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must decline* to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788

(3d Cir. 1995) (emphasis added). Plaintiff has not established that this Court should exercise supplemental jurisdiction over his state law claims, and the Court declines to do so.

**10. Leave to Amend is Denied**

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (emphasis omitted). Here, any effort to amend the Complaint to state claims against the dismissed Defendants would be inequitable in that Plaintiff appears to lack good faith or proper motives; rather, he seeks to refashion and relitigate claims that have been dismissed repeatedly by state and federal courts. *See id.*; *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (undue delay, bad faith, dilatory motive, prejudice, and futility are among the grounds that can justify denial of leave to amend) (citations omitted). Accordingly, Plaintiff shall not be afforded leave to amend to state claims against MCDR, Montgomery County, Hekking, or LaFleur.

**IV.     CONCLUSION**

For the foregoing reasons, the Motions to Dismiss filed by MCDR, Montgomery County, Hekking, and LaFleur shall be granted with prejudice and without leave to amend. Plaintiff's motion for preliminary injunction is dismissed as moot.

An appropriate Order follows.

Dated: **June 20, 2017**

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**

21